UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

       Plaintiff,

v.

                                                Criminal No. 15-20524

Latrina Williams,

       Defendant.

_____/

**OPINION AND ORDER
DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE (D.E. No. 14)**

In this action, Defendant Latrina Williams ("Defendant") is charged in an Indictment with conspiracy to commit wire fraud, access device fraud, and identity theft. (D.E. No. 1). The matter is currently before the Court on Defendant's Motion to Suppress Evidence, wherein she contends that: 1) officers unlawfully searched her home without prior consent; and 2) if consent was validly obtained, the search exceeded the scope of Defendant's consent. (D.E. No. 14).

The Court held an evidentiary hearing and entertained oral argument as to the motion on December 11, 2015. Defendant's counsel requested leave to file a supplemental brief based on the testimony received at the evidentiary hearing. Defendant's supplemental brief was filed on December 17, 2015. (D.E. No. 21). The Government filed its supplemental brief on December 18, 2015. (D.E. No. 22). For the reasons set forth below, the Court shall DENY Defendant's Motion to Suppress Evidence.

## BACKGROUND

Defendant was indicted in this action on August 20, 2015. Defendant is charged with: 1) Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. § 1349 (Count One); 2) Possession of Fifteen or More Unauthorized Access Devices, in violation of 18 U.S.C. § 1029(a)(3) (Count Two); 3) Aggravated Identity Theft - Victim K.M., in violation of 18 U.S.C. § 1028(A)(1) (Count Three); and 4) Aggravated Identity Theft - Victim J.V., in violation of 18 U.S.C. § 1028(A)(1) (Count Four). The Indictment also contains forfeiture allegations.

These charges follow a search and seizure of evidence at Defendant's residence located at 12878 Memorial, Detroit, Michigan that occurred on November 6, 2014.

### Defendant's Motion To Suppress Evidence

On October 20, 2015, Defendant filed a Motion to Suppress Evidence. (D.E. No. 14). In it, Defendant asks the Court to suppress all of the evidence that was seized from her residence on November 6, 2014.[1]

Defendant contends that the evidence should be suppressed because: 1) officers searched Defendant's residence without a valid search warrant; 2) officers obtained consent to search Defendant's residence after a search had already been conducted; and 3) if Defendant did voluntarily consent to a search, the search conducted by the officers went beyond the scope of her consent.

The Government's position is that Defendant's motion should be denied because: 1) Defendant consented to the search of her home, in writing, prior to the initiation of the search; and 2) the scope of Defendant's consent extended to the evidence seized.

---

[1] Evidence pertaining to identity theft and access device fraud from Defendant's residence and cell phone.

**Evidentiary Hearing**

With the issues so framed by the parties, this Court held an evidentiary hearing, and heard oral argument, on December 11, 2015. The Government presented three witnesses at the hearing: 1) Task Force Officer Andrew Snarey ("TFO Snarey"); 2) FBI Special Agent Brian Max ("SA Max"); and 3) FBI Special Agent Jeffrey Jacobs ("SA Jacobs").

The Government also submitted into evidence: 1) Government's Exhibit A: Southfield Police Department Permission to Search form, signed by Defendant and dated November 6, 2014[2]; 2) Government's Exhibit B: Post-Arrest Interview DVD; and 3) Government's Exhibit C: Southfield Police Department Digital Property Consent Search Form, signed by Defendant and dated November 6, 2014.

Defendant submitted into evidence Defendant's Exhibit 1: United States Department of Justice Federal Bureau of Investigation Receipt for Property Received/Returned/Released/Seized.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Having observed the evidence and the witnesses who testified at the evidentiary hearing, allowing for this Court to assess credibility, having considered the arguments presented by counsel, and having applied the governing legal principles, the Court makes the following findings of fact and conclusions of law.[3]

---

[2] Although Defendant dated the form "11/5/14," TFO Snarey testified that Defendant was mistaken as to the date, and that the "11/6/15" date appearing on the form and initialed by him was intended to rectify the mistake.

[3] To the extent that a finding of fact is more properly a conclusion of law, and to the extent that a conclusion of law is more properly a finding of fact, it should be so construed.

**Findings Of Fact**

It is undisputed that, on November 6, 2014, at approximately 7:15 a.m., Defendant was arrested by federal agents and task force officers pursuant to a warrant relating to an Indictment for violations of the Hobbs Act.

Special Agent Max was responsible for organizing Defendant's arrest. SA Max is a Special Agent with the FBI. He has been employed by the FBI for 13 ½ years. He is currently assigned to the Identity Theft Task Force. As team leader, SA Max assigned duties to the officers involved in the arrest. He briefed the officers on a time and place to meet. SA Max's duties also included ensuring the safety of those involved in the arrest.

The property on 12878 Memorial was described as a small house, measuring approximately 1,000 square feet. The living room was approximately five to ten feet away from the entryway. The kitchen and dining areas were connected. An individual standing in the living room would be able to observe the kitchen/dining area.

When SA Max and his arrest team approached Defendant's residence, he announced his presence and the team's purpose. Defendant answered the door in what Max described as "night clothes."[4] SA Max informed defendant that she was being placed under arrest. Defendant was described as polite, talkative, and pleasant. Upon entry, SA Max remained in the living room with Defendant while other officers conducted a protective sweep of the residence. The sweep lasted approximately two minutes. While in the living room, SA Max noticed a pile of gift cards

---

[4] SA Jacobs described Defendant as not being fully dressed and covered in towel.

and cash cards with other people's names on them. The cards were observed on a table and the coffee table near him. Max testified that this was of significance to him, as a federal investigator, because gift cards are often used as part of identity theft or other white-collar schemes.

Among the officers conducting the protective sweep was Special Agent Jacobs. Jacobs is a Special Agent with the FBI. He has been employed by the FBI for approximately 11 years. He is currently assigned to the Violent Crimes Task Force. Throughout the course of the sweep, SA Jacobs also observed a significant amount of gift cards, check cards, and credit cards in plain view. SA Jacobs believed this was indicative of other potential crimes. After the sweep was over, SA Jacobs approached Task Force Officer Andrew Snarey about his observations and suggested that they obtain consent to search the home.[5] TFO Snarey is a police officer with the Southfield Police Department. He has been employed by the Southfield Police Department since 2003. During his time with the Southfield Police Department, TFO Snarey has investigated financial crimes, home invasions, and commercial breaking and entering. Currently, he is assigned to the FBI Violent Crimes Task Force. He has been on the Violent Crimes Task Force for approximately one year. Based on his experience as a financial crimes investigator, Snarey testified that the cards indicated that there may have been some form of identity theft taking place.

After the initial protective sweep, but before Defendant was allowed to change into clothes, SA Jacobs conducted a second sweep of the Defendant's bedroom to ensure that it was clear of any weapons. When the bedroom was cleared, SA Max and TFO Snarey escorted

---

[5] Snarey, along with Max, maintained custody of Defendant in her living room while the sweep was being conducted.

Defendant to the room in order to allow her to change. While in the room, SA Max noticed that Defendant's closet door was open. Inside the closet was a large box containing what appeared to be dozens of medical files with different names on them. Max did not go through the box until consent to search was later obtained.

After Defendant changed, she was escorted back out to the living room. There, TFO Snarey explained that Defendant had been arrested for violations of the Hobbs Act. He proceeded to ask for general permission to search Defendant's residence. At approximately, 7:30 a.m., Snarey obtained Defendant's verbal and written consent to search. Defendant's verbal consent was memorialized in writing on a Southfield Police Department Permission to Search form. The form states, in pertinent part:

> The undersigned, residing at 12878 Memorial, Detroit, MI does hereby voluntarily authorize Detective Snarey and other officers he/she may designate to assist him/her to search my residence (or other real property) located at 12878 Memorial, Detroit, MI.
>
> ....
>
> and I further authorize said officer to remove from my residence, real estate and/or motor vehicle, whatever documents, or items of property whatsoever which they deem pertinent to their investigation, with the understanding that said officer will give me a receipt for whatever is removed.[6]
>
> ....
>
> I am giving this written permission to these officers freely and voluntarily, without any threats or promises having been made, and after having been informed by said officers that I have right to refuse this search and/or seizure.

---

[6] Defendant's "white iPhone" was added to the form as an item to be searched/seized.

(Gov't Ex. A, Permission to Search form). Defendant's signature appears at the bottom of the form. The signatures of TFO Snarey and SA Max, as witnesses, also appear at the bottom of the form.

TFO Snarey read the form aloud to Defendant. Defendant was advised that she had the right to refuse the search. Defendant did not place any limitations on the officers' ability to search the residence. Defendant did not ask the officers what items they deemed pertinent to their investigation. TFO Snarey testified that, originally, he believed the investigation pertained to Hobbs Act robberies. However, after the protective sweep, and at the time consent was sought, he believed the investigation had extended to identity theft. SA Max similarly testified that at that point in time, he believed that the materials pertinent to their investigation included evidence relating to the cards and medical files observed during the protective sweep. Before consenting to the search, Defendant was not informed by any of the officers that she was suspected of being involved in an identity theft scheme.

A search of Defendant's residence was initiated after written consent was obtained. SA Max was personally involved in the search. He obtained multiple sets of gift cards, a box containing medical files belonging to people other than Defendant, and other handwritten documents from Defendant's bedroom. SA Max believed that these items evidenced identity theft and fraud. He testified that it was uncommon to find the medical records of multiple individuals at the residence of someone else.

After Defendant consented to the search, she was handcuffed, placed into custody and transported to the Southfield Police Department. There, TFO Snarey and Special Agent Schuff interviewed Defendant. A copy of a video/audio recording of Defendant's interview was

admitted into evidence.[7] (Gov't Ex. B, Post-Arrest Interview). After Defendant was read her rights, and approximately 26 minutes after the interview was initiated, Defendant was confronted with a bag of gift cards, credit cards, and I.D.s that allegedly did not belong to her. Defendant was informed that these items were obtained from her residence. The consequences of identity theft were discussed with Defendant. Defendant did not appear surprised. Defendant did not object to the seizure of these items. Defendant did not, at any time throughout the interview, state that the evidence seized was beyond the scope of her consent. Rather, Defendant provided the officers with an explanation as to the presence of the items in her home.

Toward the end of the interview, Defendant verbally consented to a forensic examination of her phone. Defendant's verbal consent was memorialized in writing on a Southfield Police Department Digital Property Consent Search Form. (Gov't Ex. C). Defendant's signature appears at the bottom of the form. Defendant consented to the search of her phone hoping that the evidence obtained would corroborate statements she made regarding the Hobbs Act robberies and the items seized from her residence. (Gov't Ex. B, Post-Arrest Interview).

## Conclusions of Law

"The Fourth Amendment bars unreasonable searches and seizures by the government." *U.S. v. Herndon*, 501 F.3d 683, 687 (6th Cir. 2007) (citing U.S. Const. Amend. IV). Evidence seized in violation of an individual's Fourth Amendment right is not admissible against him or her at trial. *U.S. v. Grant*, 920 F.2d 376, 389 (6th Cir. 1990) (citing *Wong Sun v. U.S.*, 371 U.S. 471, 486 (1963)). Defendant has the burden of proving that the violation of one of his

---

[7] Although the recording was not played for the Court at the evidentiary hearing, the Court reviewed the recording in its entirety.

constitutional or statutory rights justifies suppression of the evidence at issue. *U.S. v. Rodriguez-Suazo*, 346 F.3d 637, 643 (6th Cir. 2003).

Warrantless searches and seizures inside a home are presumptively unreasonable. *Payton v. New York*, 445 U.S. 573, 587 (1980). "The prohibition does not apply, however, to situations in which voluntary consent has been obtained... from the individual whose property is searched..." *Illinois v. Rodriguez*, 497 U.S. 177, 182 (1990) (internal citations omitted).

When a warrantless search is authorized by consent, the terms of its authorization determine the scope of the search. *Florida v. Jimeno*, 500 U.S. 248, 251-52 (1991). "The standard for measuring the scope of the consent given is objective reasonableness–what would the typical reasonable person have understood by the exchange between the officer and the suspect?" Therefore, a search is valid "as long as an officer has an objectively reasonable belief that the search was within the scope of the consent." *Shamaeizadeh v. Cunigan*, 338 F.3d 535, 547 (6th Cir. 2003).

### A. Consent To Search Defendant's Residence Was Obtained Lawfully Because Defendant Provided Consent Prior To Any Search Taking Place[8]

The Government has the burden of proving that Defendant's consent was freely and voluntarily given. *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968). "This burden entails proving by 'clear and positive' testimony that the consent was 'unequivocal, specific, intelligently given and not influenced by any duress or coercion.'" *U.S. v. Salvo*, 133 F.3d 943, 953 (6th Cir. 1998) (internal citations omitted). "Whether the Government carried this burden is

---

[8] Although Defendant initially advanced this argument in her Motion to Suppress, it appears that the argument has been abandoned. After the evidentiary hearing, Defendant's focus shifted to the scope of the consent given, as evidenced by oral argument and Defendant's supplemental brief. Despite this, the Court shall briefly discuss the issue below.

a question of fact to be decided from the totality of the circumstances." *U.S. v. Lucas*, 640 F.3d 168, 174 (6th Cir. 2011).

Based on the credible testimony of SA Max, SA Jacobs, and TFO Snarey, the Court finds that Defendant voluntarily consented to a search of her residence both verbally and in writing before a search was conducted. The testimony reveals that, upon entry, the officers conducted a protective sweep of the residence, which lasted approximately two minutes. When the residence was cleared, and Defendant was dressed, TFO Snarey asked for Defendant's permission to search the residence. Defendant was advised of her right to refuse a search. Defendant consented to a search approximately 15 minutes after the arrest had been initiated. Defendant did not appear distressed and her consent was not obtained coercively. It was only after consent was obtained, and memorialized in writing, that officers commenced a search of Defendant's residence. This Court shall DENY Defendant's Motion to Suppress Evidence to the extent that she relies on the illegality of the search itself.

      **B.**    **The Search of Defendant's Residence Did Not Exceed The Reasonable Scope Of Defendant's Consent**

Since the Court has determined that Defendant's consent was validly obtained, the issue becomes whether the search conducted exceeded the scope of Defendant's consent. Although consensual searches are permissible under the Fourth Amendment, "the scope of a search is generally defined by its expressed object." *Jimeno*, 500 U.S. at 251.

Defendant argues that she limited the scope of her consent to a search for items the officers deemed pertinent to the Hobbs Act investigation, and not evidence relating to identity theft. Defendant relies primarily on the fact that she was never informed that the officers wanted to search her home for evidence of identity theft. Defendant contends that because only one

offense was discussed with her, consent was therefore limited to that one offense: Hobbs Act robberies. Defendant concludes that the officers "exceeded the scope of [her] limited consent by engaging in a general exploratory search for evidence of other crimes which had not been disclosed to [Defendant]." (D.E. No. 21, Def.'s Supp. Br. at 3).

The Court finds Defendant's argument unpersuasive and accordingly finds that the officers had an objectively reasonable belief that the search for identity theft evidence was within the scope of Defendant's consent. Several factors support the Court's finding.

Here, we are presented with a general consent to search Defendant's residence. Although within her right, Defendant did not explicitly limit the scope of her consent in any way. *Jimeno*, 500 U.S. at 252 ("A suspect may of course delimit as he chooses the scope of the search to which he consents."). Instead, she consented to a search of her residence twice: first, verbally and then again in writing. It was objectively reasonable for the officers to conclude that the search extended to evidence of potential identity theft located in the residence and observed in plain view. The officers could not have reasonably known that Defendant had limited the scope of her consent to items relating to the Hobbs Act robberies when she responded affirmatively to TFO Snarey's general request. *United States v. Canipe*, 569 F.3d 597, 605 (6th Cir. 2009) ("If the consent to search is entirely open-ended, a reasonable person would have no cause to believe that the search will be limited in some way."). This is especially true in light of the fact that Defendant was aware that evidence of identity theft was apparently scattered throughout her residence at the time consent was given. *See* Gov't Ex. B, Post-Arrest Interview. Although aware that the evidence was present, Defendant gave the officers sweeping consent to search her home. Notably, when confronted with the evidence, Defendant did not object that the evidence

11

seized was beyond the scope of her consent. *Id.* The Court should not find that limitations were placed on a search when Defendant had the opportunity to refuse or limit the search, but chose not to.

It is worth noting that the officers observed the evidence of identity theft in plain view. Defendant's position would essentially have the Court suppress evidence plainly located in an area consented to be searched simply because the evidence is unrelated to the underlying arrest charges or because the request to search did not specify the object of the search.

Moreover, the cases relied upon by Defendant are distinguishable in that they each involve a representation made by an officer regarding the object of their search. Here, no such representation was made. The consent form signed by Defendant stated that she consented to a search of her residence and seizure of evidence the officers deemed pertinent to their investigation. The form did not specify that the investigation pertained only to Hobbs Act robberies. TFO Snarey did not describe the object of the search. This is not a situation where Defendant was advised that the search would pertain specifically to evidence of Hobbs Act robberies. *Canipe*, 569 F.3d at 605 ("That the defendant did not–and probably could not–know what the officer was looking for does not change our view of his consent. It is self evident that a police officer seeking general permission to search a vehicle is looking for evidence of illegal activity."). Thus, the Court shall reject Defendant's argument that the officers' search exceeded the scope of Defendant's consent.

Additionally, the Court is not persuaded by Defendant's argument to the extent that it pertains to evidence seized from Defendant's phone. The video/audio recording of Defendant's post-arrest interview makes clear that Defendant unequivocally and voluntarily consented to a

complete forensic examination of her phone. The recording demonstrates that Defendant was aware that a search of the phone would extend to evidence relating to identity theft.

## CONCLUSION

For the reasons set forth above, IT IS ORDERED that Defendant's Motion to Suppress Evidence (D.E. No. 14) is DENIED.

**IT IS SO ORDERED**.

                                              S/Sean F. Cox
                                              Sean F. Cox
                                              United States District Judge

Dated: January 11, 2016

I hereby certify that a copy of the foregoing document was served upon counsel of record on January 11, 2016, by electronic and/or ordinary mail.

                                              S/Jennifer McCoy
                                              Case Manager